UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF (1) THE BLACK LG MODEL LS450 CELL PHONE, WHICH IS LISTED ON NEW YORK CITY POLICE DEPARTMENT PROPERTY CLERK INVOICE NUMBER 3000820645, AND (2) THE BLACK AND GRAY ZTE CELLULAR TELEPHONE LISTED AS ITEM 1B1 IN FBI CASE 281D-NY-2144181, CURRENTLY IN THE CUSTODY OF THE FBI WITHIN THE EASTERN DISTRICT OF NEW YORK | APPLICATION FOR A SEARCH WARRANT FOR ELECTRONIC DEVICES<br><br>Case No.  19-MJ-606 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, GREGORY KIES, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices—that are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachments B-1 and B-2.

2.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for more than seventeen years and am currently assigned to the Long Island Resident Agency, where I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for narcotics trafficking, gang

activity and violent crimes, including robberies. These investigations are conducted both in an undercover and overt capacity. I have participated in investigations involving search warrants and arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3.      I am familiar with the facts and circumstances of the investigation from my personal participation in the investigations as well as discussions with other law enforcement agents, including New York City Police Department ("NYPD") officers, and other law enforcement agencies, discussions with witnesses, review of social media accounts and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another agent or law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

4.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

5.      The property to be searched is (1) the BLACK LG MODEL LS450 CELL PHONE, WHICH IS LISTED ON NEW YORK CITY POLICE DEPARTMENT PROPERTY CLERK INVOICE NUMBER 3000820645 (the "LG PHONE"); and (2) the BLACK AND GRAY ZTE CELLULAR TELEPHONE LISTED AS ITEM 1B1 IN FBI

CASE 281D-NY-2144181 (the "ZTE PHONE"). The LG PHONE and the ZTE PHONE are collectively referred to herein as the "SUBJECT TELEPHONES."

6. The LG PHONE was seized incident to the arrest of Sharod Liburd, Tysheen Cooper and Gabriale Herbert on May 24, 2017 for a Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951.

7. The ZTE PHONE was seized from Michael Liburd's bed at the time of his April 6, 2017 arrest for violating Title 18, United States Code, Section 874 (kickbacks from public works employees).

8. The SUBJECT TELEPHONES are currently located in the lawful custody of the FBI within the Eastern District of New York.

9. The applied-for warrant would authorize the forensic examination of the SUBJECT TELEPHONES, further described in Attachments A-1 and A-2, for the purpose of identifying electronically stored data particularly described in Attachments B-1 and B-2.

## **PROBABLE CAUSE**

10. On January 11, 2018, the Honorable Ramon E. Reyes, Jr., United States Magistrate Judge, Eastern District of New York issued a warrant authorizing the search of the LG PHONE (the "January 11, 2018 LG PHONE Warrant"). (See 18 M 24.) The January 11, 2018 LG PHONE Warrant was based on the January 11, 2018 affidavit of FBI Special Agent Gregory Kies (the "January 11, 2018 LG PHONE Affidavit"). The January 11, 2018 LG PHONE Warrant and the January 11, 2018 LG PHONE Affidavit are incorporated herein by reference and attached as Appendix C.

11.     On September 25, 2017, the Honorable Peggy Kuo, United States Magistrate

Judge, Eastern District of New York issued a warrant authorizing the search of the ZTE

PHONE (the "September 25, 2017 ZTE PHONE Warrant").  (See 17 M 843.)  The

September 25, 2017 ZTE PHONE Warrant was based on the September 25, 2017 affidavit of

FBI Special Agent Gregory Kies (the "September 25, 2017 ZTE PHONE Affidavit").  The

September 25, 2017 ZTE PHONE Warrant and the September 25, 2017 ZTE PHONE

Affidavit are incorporated herein by reference and attached as Appendix D.

12.     Law enforcement officers timely executed the September 25, 2017 ZTE

PHONE Warrant and the January 11, 2018 LG PHONE Warrant.  At the time the warrants

were executed, the software used to execute the search was unable to access the data on the

Devices because the Devices were locked.  I am informed that the software in use today may

allow access to the Devices.

13.     To date, no further examination of the phones has occurred.  For the reasons

set forth in the January 11, 2018 LG PHONE Warrant and September 25, 2017 ZTE PHONE

Warrant, there is probable cause to believe that the SUBJECT TELEPHONES contain the

evidence described in Attachments B-1 and B-2.

14.     In my training and experience, I know that the SUBJECT TELEPHONES have

been stored in a manner in which their contents are, to the extent material to this investigation, in

substantially the same state as they were when the SUBJECT TELEPHONES first came into the

possession of the FBI.

## TECHNICAL TERMS

15.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed

properly from its source to its destination.  Most Internet service providers control

a range of IP addresses.  Some computers have static—that is, long-term—IP

addresses, while other computers have dynamic—that is, frequently changed—IP

addresses.

g.  Internet: The Internet is a global network of computers and other electronic

devices that communicate with each other.  Due to the structure of the Internet,

connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same

state.

16.     Based on my training, experience, and research, I know that the SUBJECT

TELEPHONES probably have capabilities that allow them to serve as a wireless telephone,

digital camera, portable media player, GPS navigation device, and PDA.  In my training and

experience, examining data stored on devices of this type can uncover, among other things,

evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17.     Based on my knowledge, training, and experience, I know that electronic devices

can store information for long periods of time.  Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device.  This information can

sometimes be recovered with forensics tools.

18.     *Forensic evidence.*  As further described in Attachments B-1 and B-2, this

application seeks permission to locate not only electronically stored information that might serve

as direct evidence of the crimes described on the warrant, but also forensic evidence that

establishes how each of the SUBJECT TELEPHONES was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on each of the SUBJECT TELEPHONES because:

h. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

i. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

j. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

k. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

l.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

20.   *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21.    I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the SUBJECT TELEPHONES described in Attachments A-1 and

A-2 to seek the items described in Attachments B-1 and B-2.

Respectfully submitted,

GREGORY KIES
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on July 1, 2019:

S/RAMON E. REYES
HON. RAMON E. REYES
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A-1

The property to be searched is the black LG model LS450 cell phone, which is listed on New York City Police Department Property Clerk Invoice number 3000820645 (the "LG PHONE"). The LG PHONE is currently in the custody of the FBI within the Eastern District of New York.

This warrant authorizes the forensic examination of the LG PHONE for the purpose of identifying the electronically stored information described in Attachment B-1.

**ATTACHMENT A-2**

The property to be searched is the BLACK AND GRAY ZTE CELLULAR
TELEPHONE LISTED AS ITEM 1B1 IN FBI CASE 281D-NY-2144181 (the "ZTE
PHONE").  The ZTE PHONE is currently in the custody of the FBI within the Eastern
District of New York.

This warrant authorizes the forensic examination of the ZTE PHONE for the
purpose of identifying the electronically stored information described in Attachment B-2.

## **ATTACHMENT B-1**

1.      All records on the LG PHONE described in Attachment A-1 that relate to violations of Title 18, United States Code, Section 1959 (violent crimes in-aid-of racketeering), Title 18, United States Code, Section 1962 (racketeering and racketeering conspiracy), Title 18, United States Code, Section 1951(a) (Hobbs Act robbery and Hobbs Act robbery conspiracy), Title 18, United States Code, Section 924 (possessing and brandishing a firearm during a crime of violence), and involve TYSHEEN COOPER, SHAROD LIBURD and GABRIALE HERBERT, including:

      a.   evidence of gang association and communication with members and associates of the West End Enterprise; and

      b.   evidence of a Hobbs Act robbery on or about May 24, 2017.

2.      Evidence of user attribution showing who used or owned the LG PHONE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## <u>ATTACHMENT B-2</u>

1.      All records on the ZTE PHONE described in Attachment A-2 that relate to violations of Title 18, United States Code, Section 1959 (violent crimes in-aid-of racketeering), Title 18, United States Code, Section 1962 (racketeering), Title 18, United States Code, Section 874 (kickbacks from public works employees), Title 18, United States Code, Section 371 (conspiracy), and involve MICHAEL LIBURD and others, including:

   a.   evidence of gang association and communication with gang members;

   b.   evidence of the murder of Antoine Flowers; and

   c.   evidence of extorting, or agreeing to extort, kickbacks from public works employees.

2.      Evidence of user attribution showing who used or owned the ZTE PHONE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# APPENDIX C

MEG:MSM
F.# 2017R00999

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

IN THE MATTER OF THE SEARCH OF
(1) THE WHITE MODEL SM-G550T1
CELL PHONE; AND (2) THE BLACK LG
MODEL LS450 CELL PHONE, BOTH OF
WHICH ARE LISTED ON NEW YORK
CITY POLICE DEPARTMENT
PROPERTY CLERK INVOICE NUMBER
3000820645

APPLICATION FOR A SEARCH
WARRANT FOR ELECTRONIC
DEVICES

Case No. 18 M 24

---

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION UNDER RULE 41 FOR A**
**WARRANT TO SEARCH AND SEIZE**

I, Gregory Kies, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.       I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—

electronic devices—which is currently in law enforcement possession, and the extraction

from that property of electronically stored information described in Attachment B.

2.       I have been a Special Agent with the Federal Bureau of Investigation ("FBI")

for more than fifteen years and am currently assigned the Brooklyn/Queens Resident

Agency, where I am responsible for conducting and assisting in investigations into the

activities of individuals and criminal groups responsible for narcotics trafficking, gang

activity and violent crimes, including robberies.  These investigations are conducted both in

an undercover and overt capacity.  I have participated in investigations involving search

warrants and arrest warrants.  As a result of my training and experience, I am familiar with

the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3.     I am familiar with the facts and circumstances of the investigation from my personal participation in the investigations as well as discussions with other law enforcement agents, including New York City Police Department ("NYPD") officers, and other law enforcement agencies, discussions with witnesses, review of social media accounts and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another agent or law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

4.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.     The property to be searched is (1) the white model SM-G550T1 cell phone (the "White Phone") and (2) the black LG model LS450 cell phone (the "LG Phone"), all of which are listed on New York City Police Department Property Clerk Invoice number 3000820645. Collectively, the White Phone and the LG Phone are referred to herein as the "Devices." The Devices are currently in the custody of the FBI within the Eastern District of New York.

6.     The applied-for warrant would authorize the forensic examination of the

Devices for the purpose of identifying electronically stored data particularly described in

Attachment B.

**<u>PROBABLE CAUSE</u>**

<u>The May 24, 2017 Armed Robbery</u>

7.     On or about May 24, 2017 in the early morning hours, two men, later

identified as TYSHEEN COOPER, also known as "Billz," and SHAROD LIBURD, also

known as "Pop," approached an individual ("John Doe") in Queens, New York, who

operates a business that sources supplies from outside the United States.

8.     The two men brandished firearms and demanded money and property from

John Doe.

9.     John Doe then threw approximately $1,000 in cash, a portion of which

represented the proceeds of his business, along with two gold necklaces onto the ground.

The men picked up the money and necklaces and got into a white Nissan (the "Nissan") and

fled.

10.     John Doe got into his car, drove after the Nissan, and called 911.  John Doe

followed the Nissan from the vicinity of the location in Queens, New York to the vicinity of

Kingsland Avenue and Meeker Avenue in Brooklyn, New York, where officers from the

New York City Police Department stopped the Nissan and arrested the occupants.  At the

time of the arrest, COOPER was located in the rear passenger seat.  SHAROD LIBURD was

located in the front passenger seat.  A woman later identified as GABRIALE HERBERT was

driving.

11.	Following their arrest, law enforcement officers recovered a Smith & Wesson black .380 caliber semiautomatic gun from underneath the front passenger seat of the car.  At the time of the arrest, law enforcement officers also recovered a black .38 caliber revolver with a defaced serial number, the necklaces stolen from John Doe, and a large quantity of cash.  At the time of the arrests, law enforcement officers also recovered the Devices.

12.	Law enforcement officers also recovered a two other cell phones at the time of the arrests, one of which belonged to GABRIALE HERBERT (the "Herbert Phone").  HERBERT denied that any of the Devices belonged to her.  A consensual search of the Herbert Phone revealed that it had been assigned telephone number (570) 580-2211.

13.	The White Phone bears number 354606081778660, which I believe to be the White Phone's IMEI number.  Records from T-Mobile for IMEI number 354606081778660 show that the telephone with that IMEI number (i.e., the White Phone) is assigned telephone number (570) 914-4912 and is subscribed to by "Charlie Brown," at 379 S. Main Street, Wilkes Barre, Pennsylvania.  Toll records for the White Phone show that between May 1, 2017 and May 24, 2017, the White Phone was in contact with the Herbert Phone multiple times.[1]

---

[1] Records from T-Mobile for telephone number (929) 370-5893 demonstrate that telephone number (929) 370-5893 was subscribed to by TYSHEEN COOPER from December 2, 2016 until January 24, 2017.  The records also show that on January 24, 2017, the subscriber name for telephone number (929) 370-5893 was changed from TYSHEEN COOPER to "Charlie Brown," the same subscriber name associated with the White Phone, with a listed address of 379 S. Main Street, Wilkes Barre, Pennsylvania, the same address associated with the White Phone.

14.     In the Herbert Phone, telephone number (718) 419-1859 is listed as "Babe" in the Herbert Phone's contacts.  The investigation has revealed that, at the time of the May 24, 2017 Hobbs Act robbery, GABRIALE HERBERT and SHAROD LIBURD were involved in a romantic relationship.

15.     Records from Sprint for telephone number (718) 419-1859 reveal that at the time of the May 24, 2017 robbery, it was assigned to a cellular telephone model that is the same model as the LG Phone, that bears the number 089602663103746184, a number that is also found on the back of the LG Phone.  In addition, toll records for telephone number (718) 419-1859 reveal that telephone number (718) 419-1859 was in contact with the Herbert Phone numerous times in May 2017, including on the day of the robbery, and was in contact with telephone number (570) 914-4912, the number assigned to the White Phone, numerous times in May 2017.

16.     Based on the entry in the Herbert Phone, the contacts between telephone number (718) 419-1859 and the Herbert Phone and the White Phone, and the fact that the LG Phone was recovered at the time of the arrests described above, there is probable cause to believe that telephone number (718) 419-1859, and therefore the LG Phone, were used by SHAROD LIBURD at or about time of the May 24, 2017 robbery.

The Indictments

17.     On June 1, 2017, a grand jury in the Eastern District of New York returned an indictment (the "Original Indictment") charging COOPER, SHAROD LIBURD and GABRIALE HERBERT with Hobbs Act robbery and Hobbs Act robbery conspiracy, each in

violation of 18 U.S.C. § 1951(a), and possessing and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  See 17 CR 296 (ILG).

18.    On November 9, 2017, a grand jury in the Eastern District of New York returned a twelve-count superseding indictment in case number 17 CR 296 (the "Superseding Indictment").  In addition to charging COOPER, SHAROD LIBURD and HERBERT with the crimes contained in the Original Indictment, the Superseding Indictment charged COOPER, MICHAEL LIBURD, also known as "Mike Mike" and "Mitty," and MAURICE WASHINGTON, also known as "Moe" and "Flaco," with, among other offenses, racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and conspiracy to commit murder-in-aid-of-racketeering and murder-in-aid-of-racketeering, in violation of 18 U.S.C. § 1959(a).  See 17 CR 296 (S-1) (PKC).  The murder-in-aid-of racketeering charge stems from the January 17, 2016 murder of Antwon Flowers.  The Superseding Indictment alleges that COOPER, SHAROD LIBURD, MICHAEL LIBURD and WASHINGTON, along with others, are members of the West End Enterprise, a gang composed of individuals residing in and around the Sea Rise Apartments, the Gravesend Houses and Surfside Gardens, also known as the "Mermaid Houses," apartment complexes located in the western end of the Coney Island neighborhood of Brooklyn, New York.

19.    Based on my training and experience, I know that individuals involved in joint criminal activity and individuals who are members and associates of street gangs often communicate with one another and with victims of their crimes via, among other things, cellular telephone, sometimes using multiple cellular telephones to do so.  The investigation in this case has revealed that several members and associates of the West End Enterprise

6

have used numerous cellular telephones in furtherance of their criminal activities. In addition, based on my training and experience, I know that individuals involved in joint criminal activity and individuals who are members or associates of street gangs frequently store contact information, including names, nicknames and telephone numbers, for their coconspirators or other members and associates of the gang in their cell phones. I also know, based on my training and experience, that members and associates of street gangs frequently store photographs indicating their affiliation with the gang and association with other members of the gang on their cell phones.

20. The Devices are currently in the lawful possession of the FBI within the Eastern District of New York. They came into the FBI's possession after being seized by the New York City Police Department following the arrests of COOPER, SHAROD LIBURD and HERBERT in May 2017.

21. The Devices are currently in the Eastern District of New York. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the NYPD.

**TECHNICAL TERMS**

22. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data

communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored

images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.   GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth

can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.

Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.  Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

23.　　Based on my training and experience, I know that the Devices probably have capabilities that allow each of them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.　In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.　　Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.　Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.　This information can sometimes be recovered with forensics tools.

25.　　*Forensic evidence.*　As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

　　　　j.　Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted

12

portion of a file (such as a paragraph that has been deleted from a word processing file).

k.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

l.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

m.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

n.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

29. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and

experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Gregory Kies
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on January 11, 2018.

HON. RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is (1) the white model SM-G550T1 cell phone (the "White Phone") and (2) the black LG model LS450 cell phone (the "LG Phone"), all of which are listed on New York City Police Department Property Clerk Invoice number 3000820645.  Collectively, the White Phone and the LG Phone are referred to herein as the "Devices."  The Devices are currently in the custody of the FBI within the Eastern District of New York.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Section 1959 (violent crimes in-aid-of racketeering), Title 18, United States Code, Section 1962 (racketeering and racketeering conspiracy), Title 18, United States Code, Section 1951(a) (Hobbs Act robbery and Hobbs Act robbery conspiracy), Title 18, United States Code, Section 924 (possessing and brandishing a firearm during a crime of violence), and involve TYSHEEN COOPER, SHAROD LIBURD and GABRIALE HERBERT, including:

     a.   evidence of gang association and communication with members and associates of the West End Enterprise; and

     b.   evidence of a Hobbs Act robbery on or about May 24, 2017.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.    18 M 24 |
| (1) THE WHITE MODEL SM-G550T1 CELL PHONE; AND (2) THE BLACK LG | ) |
| MODEL LS450 CELL PHONE, BOTH OF WHICH ARE LISTED ON NEW YORK | ) |
| CITY POLICE DEPARTMENT PROPERTY CLERK INVOICE NUMBER | ) |
| 3000820645 | ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

       An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Eastern     District of     New York
*(identify the person or describe the property to be searched and give its location)*:

     SEE ATTACHMENT A.

       I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

     SEE ATTACHMENT B.

       **YOU ARE COMMANDED** to execute this warrant on or before     January 25, 2018     *(not to exceed 14 days)*
   ❏ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

       Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

       The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     the Duty Magistrate Judge     .
                                                                    *(United States Magistrate Judge)*

       ❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
     ❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:     01/11/2018 4:35 pm                                               
                                                                   *Judge's signature*

City and state:     Brooklyn, New York                   Hon. Ramon E. Reyes, Jr.     U.S.M.J.
                                                                              *Printed name and title*

## Return

| Case No.:<br>18 M 24 | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is (1) the white model SM-G550T1 cell phone (the "White Phone") and (2) the black LG model LS450 cell phone (the "LG Phone"), all of which are listed on New York City Police Department Property Clerk Invoice number 3000820645.  Collectively, the White Phone and the LG Phone are referred to herein as the "Devices."  The Devices are currently in the custody of the FBI within the Eastern District of New York.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.     All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Section 1959 (violent crimes in-aid-of racketeering), Title 18, United States Code, Section 1962 (racketeering and racketeering conspiracy), Title 18, United States Code, Section 1951(a) (Hobbs Act robbery and Hobbs Act robbery conspiracy), Title 18, United States Code, Section 924 (possessing and brandishing a firearm during a crime of violence), and involve TYSHEEN COOPER, SHAROD LIBURD and GABRIALE HERBERT, including:

     a.   evidence of gang association and communication with members and associates of the West End Enterprise; and

     b.   evidence of a Hobbs Act robbery on or about May 24, 2017.

2.     Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

APPENDIX D

AL:RTP/MSM
F.#2017R00572

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF BLACK AND GRAY ZTE CELLULAR TELEPHONE, LISTED AS ITEM 1B1 IN FBI CASE 281D-NY-2144181. | APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE |
| | Case No. 17 MJ 843 |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Gregory C. Kies, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—that is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I have been a Special Agent with the FBI for more than fifteen years and am currently assigned the Brooklyn/Queens Resident Agency, where I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for narcotics trafficking, gang activity and violent crimes, including robberies. These investigations are conducted both in an undercover and overt capacity. I have participated in investigations involving search warrants and arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods of operation

used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3. I am familiar with the facts and circumstances of the investigation from my personal participation in the investigations as well as discussions with other law enforcement agents, including New York City Police Department ("NYPD") officers, and other law enforcement agencies, discussions with witnesses, review of social media accounts and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another agent or law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a BLACK AND GRAY ZTE CELLULAR TELEPHONE LISTED AS ITEM 1B1 IN FBI CASE 281D-NY-2144181 (the "Device"). The Device was seized from Michael Liburd's bed at the time of his April 6, 2017 arrest for violating Title 18, United States Code, Section 874 (kickbacks from public works employees). The Device is currently in the custody of the FBI within the Eastern District of New York. In my training and experience, I know that the Device has been stored in a

2

manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

### Background

7. The United States is investigating a criminal racketeering enterprise comprised of individuals residing in the West End of Coney Island, New York, which consists, inter alia, of members of the Gorilla Stone Bloods, also known as the Miller Bloods (the "Enterprise"). The investigation concerns, inter alia, racketeering and racketeering conspiracy, in violation of 18 U.S.C. 1962(c) and (d), respectively, the commission of violent crimes in aid of racketeering, including murder, committed by members and associates of the enterprise, in violation of 18 U.S.C. § 1959, drug-trafficking offenses, in violation of 21 U.S.C. § 841, extorting kickbacks from public works employees, in violation of 18 U.S.C. § 874, and conspiracy to do so, in violation of 18 U.S.C. § 371.

### The Enterprise

8. The Enterprise, including its respective leadership, membership and associates, constitutes an "enterprise" as defined by 18 U.S.C. §§ 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate commerce. The Enterprise constitutes an ongoing organization whose

members function as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

9.     The purposes of the Enterprise include the following: enriching the members and associates of the Enterprise through criminal activity, including drug trafficking and fraud; promoting and enhancing the prestige, reputation and position of the Enterprise with respect to rival criminal organizations; preserving and protecting the power, territory and criminal ventures of the Enterprise through the use of intimidation, threats of violence and acts of violence, including murder, attempted murder and assault; and keeping victims and rivals in fear of the Enterprise and its members and associates.

### Means and Methods of the Enterprise

10.     Among the means and methods by which members of the Enterprise and their associates conduct and participate in the conduct of the affairs of the enterprise are the following: members of the Enterprise and their associates use, attempt to use and conspire to use drug trafficking and fraud as means of obtaining money; members of the Enterprise and their associates have committed, attempted to commit and threatened to commit acts of violence, including murder, attempted murder and assault, to enhance the Enterprise's prestige and protect and expand the Enterprise's criminal operations; and members of the Enterprise and their associates have used and threatened to use physical violence against various individuals, including members of rival criminal organizations.

### The Murder of Antoine Flowers

11.     As set forth below, there is probable cause to believe that Enterprise members MICHAEL LIBURD and TYSHEEN COOPER, together with others, conspired to murder,

4

and murdered, Antoine Flowers, also known as "Nonni," on January 17, 2016. The investigation has revealed that the motivation for the murder of Flowers was the belief that Flowers played some role in the murder of SHAMEEK MILLER, also known as "Ta Ta," the leader of the Gorilla Stone Bloods and a leader of the Enterprise. MILLER was killed on January 16, 2016 at approximately 3:00 p.m. in the East New York section of Brooklyn, New York after MILLER and Antoine Flowers attempted to rob individuals inside of 312-318 New Lots Avenue. During the attempted robbery, MILLER was shot and killed. Flowers can be seen on surveillance video fleeing the scene in a car, running over MILLER's body in the process.

12.    The investigation, including a surveillance video depicting the Flowers murder, has revealed that, after MILLER's death, members and associates of the Gorilla Stone Bloods conspired to kill Flowers. Flowers was murdered less than 24 hours after MILLER's death, on January 17, 2016 at approximately 9:15 p.m., when MICHAEL LIBURD, also known as "Mike Mike" and "Mitty," shot him in the back of the head outside of 2839 West 33rd Street, in the Coney Island section of Brooklyn, New York. COOPER was with LIBURD when LIBURD shot and killed Flowers, and COOPER also fired a weapon in Flowers' direction.

13.    The investigation, including witness interviews and review of surveillance video, social media and telephone records, has revealed that Enterprise members, including LIBURD and COOPER, were in communication with each other and arrived, at various times prior to the murder, at 2839 West 33rd Street. 2839 West 33rd Street is a building with two entrances – front and back. At the time of the murder, surveillance video depicts

5

Enterprise members exiting the front entrance as other Enterprise members, including LIBURD and COOPER, exited the back entrance with Flowers, and then killed him.

14.    Surveillance video from a retail store depicts Flowers purchasing a telephone the morning of January 17, 2016. A review of a telephone recovered by law enforcement officers from Flowers after his death (the "Flowers Phone") revealed that the Flowers Phone appeared to be recently activated. Hours before Flowers' death, at approximately 4:32 p.m. on January 17, 2016, using the Flowers Phone, Flowers sent a text message to another individual stating, in substance and part, "Waiting on much and mikemike." Based on my training, experience and participation in this investigation, I believe that "much" was a reference to Enterprise member JAMIE RAMPERSANT, also known as "Moochie," and "mikemike" was a reference to LIBURD, also known as "Mike Mike." Based on the investigation, I believe that RAMPERSANT and LIBURD are brothers.

15.    On the day of the murder, after the Flowers Phone was activated, the Flowers Phone was in contact with a telephone number ending in 7206, stored in the Flowers Phone as "Mitty," which I believe to be a reference to LIBURD (hereinafter, the "Liburd Phone").[1] The Flowers Phone was also in contact with a telephone number ending in 9556, stored in the Flowers Phone as "Billy," which I believe to be a reference to COOPER, also known as "Billz" (hereinafter, the "Cooper Phone"). The Flowers Phone was also in contact with a telephone number ending 4426, stored in the Flowers Phone as "Much," which I believe to

---

[1] The telephone number associated with the Device is not the number that is associated with the Liburd Phone.

be a reference to RAMPERSANT, also known as "Moochie" (hereinafter, the "4426 Phone").

16.　　A review of telephone records obtained pursuant to subpoena demonstrates that the day of the murder, the Liburd Phone and the 4426 Phone were in contact with each other. A review of telephone records further revealed that the Cooper Phone was in contact with the 4426 Phone on January 16, 2016 – the day before the murder. On the day of the murder, January 17, 2016, the Liburd Phone, the Cooper Phone and the 4426 Phone were in contact with a telephone number ending in 6435, which was a telephone number used by Enterprise member MAURICE WASHINGTON, also known as "Mo," and "Flaco" (hereinafter, the "Washington Phone").

17.　　On January 18, 2016, the day after Flowers was killed, Enterprise member MAURICE WASHINGTON, also known as "Flaco" and "Mo," a member of the Gorilla Stone Bloods, spoke with ANTHONY JOHNSON, an incarcerated Enterprise member, about the murder of MILLER. JOHNSON called WASHINGTON on a three-way call with an unidentified female caller ("UF"). The call was recorded by the New York State Department of Corrections, and the following is an excerpt from the call:

| UF: | You ain't call Mo? |
| JOHNSON: | Nah, I ain't call him yet. Why? What's up? |
| UF: | Alright. Cause he text me. He said, tell Stoney to hit me up, we got a hit and a touchdown. |
| JOHNSON: | A hit and a touchdown? |
| UF: | Yeah, that's what he text my phone and said. |

| JOHNSON: | What he means by that? |
|---|---|
| UF: | I don't know. And I said, "ok." And, he text me and said, "no, tell Stoney, we got a hit and a touchdown," with mad different emoji. So, I sent him emoji back like, "alright, I'm gonna let him know," but I don't know what that means. |
| JOHNSON: | A hit and a touchdown, fuck is a touchdown. Call him three-way for me. |
| UF: | Hold on. Hello. |
| JOHNSON: | Hello, yo, what's poppin' bro? |
| WASHINGTON: | Same shit. I'm here in the boro. |
| JOHNSON: | What's in the boro? You with your cousin? |
| WASHINGTON: | Yeah, my cousin's crib. Yeah. |
| JOHNSON: | Alright, what's the word? |
| WASHINGTON: | Nah, that dude he was with got killed last night. |
| JOHNSON: | Oh, word? |
| WASHINGTON: | Yeah. |
| JOHNSON: | What's the nigga's handle again? |
| WASHINGTON: | Ti Ti baby father, um Nonni. |
| JOHNSON: | Who baby father? |
| WASHINGTON: | The Spanish bitch, my nigga [I/A], Ti Ti, be over there, um, Amanda. |
| JOHNSON: | Oh, alright. His name is Nonni, right? |
| WASHINGTON: | Yeah, Nonni, they call him nasty. Nonni. |
| JOHNSON: | I'm sayin', that came from the Rise? |

| WASHINGTON: | Huh? |
| JOHNSON: | It came from the Rise? |
| WASHINGTON: | It came from both sides. |
| JOHNSON: | Huh? |
| WASHINGTON: | Both sides. Both sides. |

Based on my training, experience and participation in this investigation, I believe that during this call, WASHINGTON and JOHNSON discussed the murder of Flowers ("Nonni"). I believe that UF received a text message from WASHINGTON indicating that the gang had killed Nonni ("we got a hit and a touchdown"). JOHNSON asked WASHINGTON whether individuals from Sea Rise Apartments ("the Rise") were responsible, and WASHINGTON said that "both sides" were responsible. I believe that when JOHNSON referred to individuals from Sea Rise, he was referring to Enterprise members residing in the Sea Rise Apartments, a housing development in Coney Island where MILLER resided, along with many Enterprise members. I further believe that when WASHINGTON stated that "both sides" were responsible, he meant that individuals from Sea Rise Apartments and Mermaid Houses, another housing development where Enterprise members, including RAMPERSANT, resided, were responsible for the murder.

### Kickbacks From Public Works Employees

18.    On April 4, 2017, a grand jury in the Eastern District of New York indicted MICHAEL LIBURD for extorting kickbacks from public works employees, in violation of Title 18, United States Code, Section 874. See United States v. Liburd, 17 CR 178 (ARR).

Liburd was arrested on April 6, 2017. The Device was seized from LIBURD's bed at the time of his arrest.

19.     The investigation revealed that LIBURD placed workers into construction jobs on New York City Housing Authority projects in Coney Island in exchange for a portion of the workers' salaries and that he used threats of force to collect payments that were owed to him. The investigation also revealed that LIBURD used several different cellular telephone numbers to communicate via telephone call and text messages about the kickback scheme. The Device rang when law enforcement officers called a telephone number LIBURD used in connection with the kickback scheme.

20.     For example, LIBURD sent several text messages to a victim stating, "Yo dis mike," "Have my shit today not trying to be looking for u do what u gotta," "Shit crazy jus have my $ today or its gonna be a problem if u did what u want this time keep it cuz im goona hurt u," "I'm coming to get my money today," and "U GOT THAT BUCK IM FUCK UP."

21.     During the course of the investigation, law enforcement officers made controlled payments to LIBURD. During one such payment, which was recorded, a confidential source ("CS") called LIBURD and, in substance and in part, LIBURD told the CS to pay him $300, which he called "the regular," which LIBURD later reduced to "a buck fifty." The CS thereafter went a store, where RAMPERSANT, who the investigation has revealed to be LIBURD's brother, came out and told him where to go pay LIBURD.

22.     On August 23, 2017, LIBURD pled guilty to violating 18 U.S.C. § 874. He has not yet been sentenced. The investigation into LIBURD's coconspirators is ongoing.

23.     Based on my training and experience, I know that individuals involved in joint criminal activity often communicate with one another and with victims of their crimes via, among other things, cellular telephone, sometimes using multiple cellular telephones to do so. As set forth above, the investigation has revealed that LIBURD has used multiple cellular telephones to communicate with coconspirators, such as RAMPERSANT and COOPER, and with victims.

## TECHNICAL TERMS

24.     Based on my training and experience, I use the following technical terms to convey the following meanings:

        a.     Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other

information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the

ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. <u>GPS</u>: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. <u>IP Address</u>: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (<u>e.g.</u>, 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that

13

computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

25.  Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player and GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Device. This information can sometimes be recovered with forensics tools.

27.  Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as

direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer

behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. <u>Nature of examination</u>. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29. <u>Manner of execution</u>. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

31. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organization and not all of the targets of this investigation are aware of the investigation or its extent. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Gregory C. Kies
Special Agent
FBI

Dated: Brooklyn, New York
September 25, 2017

HON. PEGGY KUO
UNITED STATES MAGISTRATE JUDGE

17

## ATTACHMENT A

The property to be searched is a BLACK AND GRAY ZTE CELLULAR TELEPHONE LISTED AS ITEM 1B1 IN FBI CASE 281D-NY-2144181 (the "Device"). The Device was seized from Michael Liburd's bed at the time of his April 6, 2017 arrest for violating Title 18, United States Code, Section 874 (kickbacks from public works employees). The Device is currently in the Eastern District of New York.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.  All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 1959 (violent crimes in-aid-of racketeering), Title 18, United States Code, Section 1962 (racketeering), Title 18, United States Code, Section 874 (kickbacks from public works employees), Title 18, United States Code, Section 371 (conspiracy), and involve MICHAEL LIBURD and others, including:

    a.  evidence of gang association and communication with gang members;

    b.  evidence of the murder of Antoine Flowers; and

    c.  evidence of extorting, or agreeing to extort, kickbacks from public works employees.

2.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No.    17 MJ 843 |
| BLACK AND GRAY ZTE CELLULAR TELEPHONE, LISTED AS ITEM 1B1 IN FBI CASE 281D-NY-2144181. | ) ) ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____New York_____
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

**YOU ARE COMMANDED** to execute this warrant on or before _____October 9, 2017_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____the Duty Magistrate Judge_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:      09/25/2017 2:05 pm

_____
*Judge's signature*

City and state:      Brooklyn, New York

Hon. Peggy Kuo          U.S.M.J.
*Printed name and title*

**Return**

| Case No.: 17 MJ 843 | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

| Print | Save As... | | Reset |
|---|---|---|---|

## ATTACHMENT A

The property to be searched is a BLACK AND GRAY ZTE CELLULAR TELEPHONE LISTED AS ITEM 1B1 IN FBI CASE 281D-NY-2144181 (the "Device"). The Device was seized from Michael Liburd's bed at the time of his April 6, 2017 arrest for violating Title 18, United States Code, Section 874 (kickbacks from public works employees). The Device is currently in the Eastern District of New York.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.     All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 1959 (violent crimes in-aid-of racketeering), Title 18, United States Code, Section 1962 (racketeering), Title 18, United States Code, Section 874 (kickbacks from public works employees), Title 18, United States Code, Section 371 (conspiracy), and involve MICHAEL LIBURD and others, including:

   a.   evidence of gang association and communication with gang members;

   b.   evidence of the murder of Antoine Flowers; and

   c.   evidence of extorting, or agreeing to extort, kickbacks from public works employees.

2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.